## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **CARLOS NICHOLS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20-cv-2913-JTF-atc** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **ACTING COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER REVERSING AND REMANDING THE COMMISSIONER'S DECISION

On December 18, 2020, Claimant Carlos Nichols filed a Complaint seeking judicial review of a Social Security disability benefits decision. (ECF No. 1.) Nichols seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying him disability insurance benefits under Title II of the Social Security Act ("the Act"). 42 U.S.C. §§ 401-34. Progression on the case was halted by multiple extensions of time and a partial stay, but Nichols's brief was ultimately filed on November 15, 2021. (ECF No. 13.) The Commissioner responded on January 27, 2022. (ECF No. 16.) For the reasons below, the decision of the Commissioner is **REVERESED AND REMANDED**.

### I.     FACTUAL BACKGROUND

Nichols filed for Social Security Disability Insurance benefits on March 14, 2018, alleging disability beginning on March 9, 2018. (ECF No. 9-3, 16.) His claim was initially denied on February 22, 2019, and again upon reconsideration on May 15, 2019. (*Id.*) Nichols then requested a hearing, which was held by telephone on January 7, 2020. (*Id.*)

After this hearing, the ALJ applied the five step analysis to determine whether Nichols was disabled under the meaning of the Act. At the first step, the ALJ determined that Nichols had not engaged in any substantial gainful activity since March 9, 2018. (*Id.* at 19.) At the second step, the ALJ found that Nichols had the following severe impairments: "diabetes mellitus, kidney failure, hypertension, cardiac impairment, cervical and lumbar spine impairments." (*Id.*)

At the third step, the ALJ concluded that Nichols's existing impairments did not meet or medically equal, either alone or in the aggregate, the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Before proceeding to step four, the ALJ was required to determine Nichols's residual functional capacity ("RFC"), or his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." (ECF No. 9-3, 18.) The ALJ considered Nichols's physical examination records, reported symptoms, and medical opinions. (*Id.* at 19-24.) On appeal, Nichols takes issue with the ultimate RFC determination for not considering Nichols's claimed restrictions regarding "manipulative functions." (ECF No. 13-1, 1.)

Relevant to this argument, at the hearing, the ALJ asked a vocational expert ("VE") to opine on whether three different hypothetical people could perform Nichols's past work. All hypotheticals included a person of Nichols's age, education, and work history, but each possessed a different RFC. (ECF No. 9-3, 65-66.) First, the ALJ asked whether a person limited to light work as defined by the Commissioner, except for limitations of 2 hours of walking/standing in a day, occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, occasionally balancing, stooping, kneeling, crouching, and crawling, avoiding concentrated exposure to extreme heat and cold, and avoiding moderate exposure to hazards, could perform any of Nichols's past relevant work. (*Id.* at 65.) The VE stated that none of the past work could be performed as it

was performed by Nichols, but that two of Nichols's prior jobs (Order Takers Supervisor and Customer Order Clerk) could be performed at a sedentary work level. (*Id.* at 65-66.) Second, the ALJ asked whether the same person as in the first hypothetical but who could never climb ramps or stairs, never climb ladders, ropes, or scaffolds, never balance, occasionally stoop, never kneel, crawl or crouch, tolerate occasional exposure to extreme cold and heat, and must avoid all hazards would change the VE's conclusion. (*Id.* at 66.) The VE stated that it would not, and that the person could still do those jobs. (*Id.*) Finally, the ALJ asked whether the same person as in the previous hypotheticals, but who is limited to sedentary work, sitting for only six hours in a day, can never climb ramps, stairs, ladders, ropes or scaffolds, occasionally stoop, never kneel, crouch, or crawl, and must avoid all exposure to extreme heat, cold, and hazards, would change the VE's conclusion. (*Id.*) Again, she indicated it would not. (*Id.*) Nichols's counsel then asked her own hypothetical, specifically whether the same person in any of the hypotheticals above could perform the jobs the VE mentioned if they were limited to reaching, handling, fingering, and feeling only occasionally, meaning two hours out of an eight-hour workday. (ECF No. 9-3, 67.) The VE indicated that the person could not perform the jobs, and that the reaching, handling, fingering, and feeling restrictions "would eliminate those jobs." (*Id.*)

When determining Nichols's RFC, the ALJ first considered Nichols's own account of his symptoms. (*Id.* at 20.) The ALJ determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 21.) Regarding Nichols's diabetes, the ALJ noted that the record indicated that the condition was "severe" but that the record "fails to document specific manifestations of th[e] condition that would

prohibit work anticipated by the residual functional capacity adopted herein," namely because most records indicated that the condition was "controlled" although "accompanied by hyperglycemia" and a need for insulin. (*Id.* at 22.) Regarding Nichols's hypertension, the ALJ stated that these issues had improved since Nichols's coronary artery bypass grafting, but that the limits and issues were nevertheless considered. (*Id.*) Regarding Nichols's kidney failure, the ALJ found that "while his condition is severe and complaints of fatigue, although inconsistently documented in the record, have been considered, there is no persuasive evidence that his condition when considered singly or in combination would prevent the range of work detailed above." (ECF No. 9-2, 22-23.) Finally, regarding Nichols's back issues, the ALJ found that "claimant's spinal issues reasonably limit claimant to lifting/carrying 20 lbs. occasionally and 10 lbs. frequently, as well as causing postural limitations and limitations standing/walking, claimant's ability to act as caregiver for even 20 hours a week while performing the above-referenced duty demonstrates greater abilities than have been professed." (*Id.* at 23.) The above referenced duty, it appears, is Nichols's caring for his disabled daughter, which "[i]n September 2018" required him to lift 125 lbs. frequently.[1] (*Id.*) The ALJ also considered Nichols's obesity despite it not being shown to cause any specific limitations, due to its exacerbating effects on other limitations. (*Id.*)

The ALJ next considered medical opinion evidence in the record. There were three opinions regarding Nichols's physical limitations. First, the ALJ considered the opinions of the state agency consultants, Dr. Celia Gulbenk and Dr. David Kroning, writing the following:

> As for physical opinions from the Department of Disability Services consultants, Dr. Celia Gulbenk reviewed the evidence in February 2019, and Dr. David Kroning offered a slightly more restrictive one in May 2019. Dr. Kroning indicated claimant had only a frequent ability to lift overhead bilaterally. The undersigned finds Dr. Kroning's opinion in that regard less persuasive. Although claimant has cervical issues, they have not been affirmatively demonstrated to prohibit all overhead lifting. Dr. Kroning attributed claimant's problems with overhead lifting as related

---

[1] Nichols testified at his hearing that he is no longer able to pick up his daughter. (ECF No. 9-3, 58.)

to his coronary artery bypass grafting procedure. However, Dr. Kroning only acknowledged claimant's ability to "complete light household chores", and he was not aware that claimant was providing care for his disabled daughter at home 20 hours per week and frequently lifting up to 125 pounds at a time. The undersigned concludes that Dr. Gulbenk's opinion of no overhead lifting limitations is more persuasive, as well as Dr. Gulbenk's opinion that claimant can stand and/or walk about two hours in an eight-hour workday.

(ECF No. 9-3, 24) (internal citations omitted). The ALJ then considered the opinion of Mary

Simpson, FNP, who had seen Nichols at least three times. Regarding Simpson's opinions, the ALJ

stated the following:

The undersigned considered the medical opinion by Mary Simpson, FNP dated April 22, 2019. It is partially persuasive. She indicated claimant can occasionally lift 10 pounds and stand/walk less than 2 hours in an 8 hour day due to neck disc herniation, nerve pain radiating down arm, and impaired upper extremity sensation/strength. Despite Nurse Simpson's knowledge of all of claimant's conditions, in the past, she encouraged claimant to engage in exercise activity three times a week "once cardio clears". Further, claimant was examined on April 11, 2019 at the Light Clinic and Nurse Simpson noted that claimant's subjective "Review of Systems" history was positive for complaints of arthralgias, back pain, neck pain and neck stiffness, but negative for gait problems and myalgias. Nurse Simpson indicated claimant had no edema on his musculoskeletal examination, and there is no indication of decreased sensation/strength, radiating nerve pain or neck disc herniation. Although spinal stenosis in the cervical region was assessed, there is no reference to the objective cervical imaging to support this assessment and a Semmes Murphey Clinic record from November 7, 2019 references cervical x-ray findings showing stable degenerative disease at C6-C7 with an otherwise negative exam. Nurse Simpson continued to encourage claimant to engage in exercise up to three times per week as tolerated with claimant's cardiac rehabilitation. The undersigned is unaware of whether claimant followed Nurse Simpson's advice to engage in exercise activity three times per week. But the objective record does show that claimant is described as "being the primary caregiver for his disabled daughter" and that his caregiving duties require him to among other things, "lifting 125lbs frequently," although others apparently assisted claimant at times. Nurse Simpson's records reflect claimant had no worse than stable angina pectoris per Nurse Simson's April 22, 2019 exam. The objective clinical findings including normal sensation, strength, deep tendon reflexes and motor functioning all fail to support an inability to stand/walk "less than two hours" per day as recommended by Nurse Simpson, nor do they support the manipulative limitations she suggested at Exhibit 15F. Nevertheless, Nurse Simpson's opinion is partially persuasive to the extent it is consistent with the postural limitations adopted herein, and it has been fully considered in light of the evidence of record in determining claimant's residual functional capacity.

As for late submitted letter evidence from Nurse Simpson dated January 21, 2020, the letter evidence does not provide a basis for altering the administrative decision. As discussed elsewhere in this decision, claimant is one of the healthcare providers for his disabled daughter, and he testified he has to provide care for her up to 20 hours per week. Other evidence referenced above shows this entails lifting 125 lbs., so Ms. Simpson's recommendation that claimant can lift no more than 10 lbs. is contrary to other evidence of record. The letter evidence acknowledges Nurse Simpson's advice to claimant to maintain a regular, low impact exercise regimen. The undersigned concludes that nothing in this letter alters the finding that claimant can perform his past relevant work or order taker supervisor, a job defined in the Dictionary of Occupational Titles at section 241.137-026 as requiring sedentary exertion.

(*Id.* at 24-25) (internal citations omitted). Ultimately, in light of all of the above evidence, the ALJ found that "the claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he can stand and/or walk 2 hours; occasionally climb ramps/stairs; never climb ladders, ropes, scaffolds; occasionally balance, stoop, kneel, crouch, crawl; avoid concentrated exposure (interpreted to mean tolerate up to frequent exposure) to extreme cold, extreme heat; and avoid even moderate exposure (tolerate up to occasional exposure) to hazards." (*Id.* at 20.) Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." Thus, the ALJ adopted the first hypothetical RFC the VE was asked about.

At step four, the ALJ determined that Nichols was "capable of performing past relevant work as an order taker supervisor" based on the VE's testimony described above. (ECF No. 9-3, 25.) At step five, the ALJ accordingly determined that Nichols had not been under a disability, as defined, from March 9, 2018 through the date of the decision and denied benefits. (*Id.* at 26.)

The ALJ published his decision on February 4, 2020. (*Id.*) Nichols appealed this decision to the Appeals Council, which denied review on October 14, 2020. (*Id.* at 2.) Nichols then filed

the present appeal on December 18, 2020, arguing that the ALJ inaccurately determined his RFC by not finding reaching restrictions. (ECF No. 13-1.)

## II. LEGAL STANDARD

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. *Id.*; *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 745 (6th Cir. 2018); *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (quoting *Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case *de novo*, resolve conflicts in the evidence, or

decide questions of credibility. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

## III.   LEGAL ANALYSIS

Nichols makes one argument in his brief. He argues that the ALJ's RFC determination was inaccurate because the ALJ did not address "manipulative functions" in the RFC. (ECF No. 13-1, 12.) Specifically, he notes that when "the VE was asked to include the limitation of Mr. Nichols' ability to reach for more than two hours (occasional) in an eight-hour day, she responded that he would not be able to return to past work." (*Id.*) Nichols believes that the record adequately reflects these limitations. First, he takes issue with the ALJ finding Dr. Gulbenk's opinion "that Mr. Nichols would have no limitations of reaching overhead persuasive even though she doesn't mention Mr. Nichols' MRI that discusses the severity of his cervical spine issue and how these images correlate with Mr. Nichols' radiculopathy symptoms." (*Id.*) (internal citations omitted). Second, he believes that the ALJ finding Simpson's opinion "partially persuasive because she instructed Mr. Nichols to exercise" while also recommending severe restrictions was unjustified, as "Ms. Simpson was suggesting low impact exercise to stave off further damage to his heart and kidneys." (*Id.*) Finally, Nichols argues that the ALJ "penalizes [him] for assisting in the caretaking of his disabled adult daughter who lives in his home," but ignores that Nichols can no longer lift his daughter. (*Id.*)

Nichols's first two arguments are largely related to how the ALJ assessed the medical opinions of Dr. Gulbenk and Dr. Simpson. Medical opinions are assessed by ALJs under 20 C.F.R.

§§ 404.1520c and 416.920c. These regulations replaced previous regulations that called on ALJs to give different medical opinions different "weight" depending on a number of factors. Now, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, there is a "procedural guarantee that an ALJ will explain – will 'articulate' – how persuasive [they] found each medical source." *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 905 (E.D. Mich. 2021). Persuasiveness is determined after considering five factors, specifically supportability, consistency, the source's relationship with the claimant, the source's specialized area of practice, and a general "other factors" category. *Id.* However, "supportability and consistency are the most important factors" and are the only factors the ALJ is required to address in their written opinion. *Chigano v. Kijakazi*, No. 3:20-CV-00256-HBG, 2021 WL 3934475, at *10 (E.D. Tenn. Sept. 2, 2021) (citing 20 C.F.R. § 404.1520(c)(b)(2)). This is the "'minimum level of articulation' to be provided in determinations and decisions[.]" *Hardy*, 554 S. Supp. 3d at 906 (quoting *Warren I. v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021)). "[F]ailure . . . to meet these minimum levels of articulation frustrates [the] court's ability to determine whether the [claimant's] disability determination was supported by substantial evidence." *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. Jul. 20, 2021).

Nichols's complaint regarding the ALJ's assessment of Dr. Gulbenk's opinion is that Dr. Gulbenk did not "mention Mr. Nichols' MRI that discusses the severity of his cervical spine issue and how these images correlate with Mr. Nichols' radiculopathy symptoms." (ECF No. 13-1, 12.) The ALJ noted that "additional evidence was added to the file after Dr. Gulbenk's review, but the additional evidence does not provide a basis for altering reliance on her opinion." (ECF No. 9-3,

20.) The ALJ does not specify what this additional evidence was, although the Commissioner argues the MRI was among this evidence. (ECF No. 16, 8.) But this is symptomatic of a larger issue: the ALJ's failure to adequately assess Dr. Gulbenk's opinion under the regulations. The entirety of the ALJ's discussion of Gulbenk's opinion is reproduced below:

> Dr. Gulbenk had program knowledge, reviewed longitudinal evidence, and gave good reasons for her opinion. Additional evidence was added to the file after Dr. Gulbenk's review, but the additional evidence does not provide a basis for altering reliance on her opinion. [. . .]

> As for physical opinions from the Department of Disability Services consultants, Dr. Celia Gulbenk reviewed the evidence in February 2019 (Exhibit 2A), and Dr. David Kroning offered a slightly more restrictive one in May 2019 (Exhibit 3A). [. . .]

> The undersigned concludes that Dr. Gulbenk's opinion of no overhead lifting limitations is more persuasive, as well as Dr. Gulbenk's opinion that claimant can stand and/or walk about two hours in an eight-hour workday (Exhibit 2A). [. . .]

(ECF No.; 9-3, 20, 24.) This discussion fails to address either the supportability or consistency of Gulbenk's opinion. The ALJ summarily notes that Dr. Gulbenk had "program knowledge, reviewed longitudinal evidence, and gave good reasons for her opinion," but does not spell out what those good reasons are or why he considered them good. "Good reasons" could potentially be that the opinion was supported by the evidence in the record and consistent with other findings, but the ALJ did not discuss this at all. The regulations are not demanding, but "still require that the ALJ provide a coherent explanation of [their] reasoning." *Hardy*, 554 F. Supp. 3d at 906 (quoting *Lester v. Saul*, No. 20-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020)). Thus, regardless of whether Dr. Gulbenk's opinion considered the later MRI, the ALJ failed to adequately assess, consider and articulate reasons why Dr. Gulbenk's the opinion was persuasive. This is important, as the ALJ found Dr. Gulbenk's opinion more persuasive than any other opinion in the record, and while he devoted substantial discussion to Simpson's opinion in particular, the

articulation requirement exists at the source level.[2] 20 C.F.R. § 404.1520c(b)(1). The Sixth Circuit has held that "an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions . . . denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (quoting *Rogers*, 486 F.3d at 243); *see also Hardy*, 554 F. Supp. 3d at 908 ("Even if the Court were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with the regulations as harmless error.") (quoting *Blakely*, 581 F.3d at 410) (internal quotation marks omitted).

Given these procedural failings, the Court must remand this case for additional consideration. While Nichols requests an immediate award of benefits, such a reward is only warranted where "all essential factual issues have been resolved" and "the record adequately establishes [a claimant's] entitlement to benefits." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court does not believe the record resolves all factual issues and is not authorized or qualified to resolve those issues itself.

## IV.    CONCLUSION

For the reasons above, the decision of the Commissioner is **REVERSED AND REMANDED** for additional consideration.

---

[2] The ALJ's discussion of Simpson's opinions was adequate under the regulation and included extensive discussion of the medical evidence he believed discounted its persuasiveness. His interpretation of the evidence, including her exercise regimen prescription, is supported by substantial evidence. Nichols's complaints on this point functionally ask the Court to view the weight of different pieces of evidence differently than the ALJ, which the Court cannot do. *Defrece v. Comm'r of Soc. Sec.*, No. 1:17-cv-188, 2018 WL 4266238, at *1 (W.D. Mich. Mar. 12, 2018) ("A decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.") (citing *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) *see also Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *12 (E.D. Tenn. Mar. 11, 2019) (Ultimately, although Plaintiff cites to treatment records, which she claims are consistent with Ms. Poschke's opinion, and would interpret the medical record differently, the Court finds that the ALJ's determination was within his 'zone of choice.'") (quoting *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

**IT IS SO ORDERED** this 30th day of September, 2022.

_s/John T. Fowlkes, Jr._
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE